UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UAB PULSETTO,<br><br>    Plaintiff,<br>v.<br><br>NEURO FLOW LABS LIMITED<br><br>    Defendant. | Case No. [TBD]<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff UAB Pulsetto ("Plaintiff") brings this action against Defendant Neuro Flow Labs Limited ("Defendant"), and alleges as follows:

### PARTIES

1. Plaintiff UAB Pulsetto ("Plaintiff" or "Pulsetto") is a private limited company organized under the laws of Lithuania, with its principal place of business in Vilnius, Lithuania. Plaintiff designs, manufactures, and sells medical and wellness devices, including its proprietary vagus nerve stimulator marketed under the name Pulsetto (the "Pulsetto Device").

2. Defendant Neuro Flow Labs Limited ("Defendant") is, on information and belief, a limited company organized under the laws of Hong Kong with a registered address of Room 304, 3/F, David House, 8-20 Nanking Street, Hong Kong. Defendant is engaged in the manufacture, promotion, and sale of consumer neurostimulation devices, including a product marketed as the Vyntalix DeepSleep Neurostimulator (the "Vyntalix"), which is offered for sale to consumers within the United States and this District.

### JURISDICTION AND VENUE

3. This action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

4. This Court has subject-matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28

-1-

U.S.C. §§ 1331 and 1338(b).

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant transacts business in this District and offers the infringing Vyntalix for sale here, and a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

*A. The Pulsetto Device and Its Trade Dress*

6.     Pulsetto is the owner, creator, and developer of the Pulsetto Device, a vagus nerve stimulator that provides a non-invasive neurostimulation device designed to promote stress relief and improve sleep quality.

7.     The Pulsetto Device embodies a distinctive, non-functional trade dress that includes: (a) a C-shaped band designed to wrap around the user's neck; (b) metal electrodes located on the inner parts of both ends (two per side) to contact the vagus nerve; (c) vertical protrusions at each end housing the electrodes; and (d) a power button located on the lower portion of the right protrusion.

8.     The overall configuration of the Pulsetto Device is characterized by a deliberate design that balances ergonomic function with distinctive aesthetic appeal. The smooth, continuous curvature of the C-shaped band, the proportional placement of the vertical end housings, the integrated metal electrode plates, and the minimalist circular power indicator collectively convey a modern, refined appearance. The combination of these visual elements results in an immediately recognizable design that is associated in the minds of consumers with Pulsetto and its innovative stress-relief technology.

9.     The combination of these elements gives the Pulsetto Device a distinctive, modern appearance that serves to identify Pulsetto as the source of the product.

10.    Alternative product configurations could perform the same vagus-nerve-

stimulation function, and thus the Pulsetto Device's aesthetic configuration is non-functional.

11. True and correct photographs of the Pulsetto Device as sold in the United States are attached to the Declaration of Marijus Šaras, filed concurrently herewith.

### B. Market Recognition and Secondary Meaning

12. Since its introduction, the Pulsetto Device has achieved substantial recognition among consumers, influencers, and media outlets in the United States and internationally.

13. As described in the Declaration of Marijus Šaras, the Pulsetto Device has been prominently featured in mainstream media outlets, product reviews, and online publications, as well as in social-media endorsements by public figures and influencers. The Device has also appeared in televised and streaming media productions and in widely viewed online videos demonstrating its use. These appearances and endorsements have generated substantial consumer awareness and reinforced public association between the Pulsetto Device's distinctive appearance and Pulsetto as its source.

14. Pulsetto has invested heavily in marketing, promotion, and distribution in the United States and has achieved significant commercial success. Its digital advertising campaigns reach millions of U.S. consumers each month, its website receives tens of thousands of daily visits, and U.S. consumers actively search for "Pulsetto" and related terms at high volume. Since 2022, Pulsetto has developed nationwide online sales and strong brand recognition associated with the Pulsetto Device's unique configuration.

15. As a result of Pulsetto's extensive marketing, widespread media exposure, influencer visibility, and sustained U.S. sales, the Pulsetto Device's overall visual configuration and trade dress have acquired distinctiveness and secondary meaning identifying Pulsetto as the exclusive source of the product in the minds of consumers.

*C. Defendant's Infringement*

16. In or around June 2025, Plaintiff discovered that Defendant had launched a competing device, the "Vyntalix DeepSleep Neurostimulator," through a Kickstarter campaign and accompanying press coverage.

17. True and correct photographs of the Pulsetto Device and screenshots of Defendant's infringing Kickstarter campaign and related marketing materials are attached as Exhibits A and B to the Declaration of Marijus Šaras, filed concurrently herewith.

18. Defendant's Vyntalix copies the overall look and configuration of the Pulsetto Device including the same C-shaped neck band, dual vertical end housings, mirrored electrode placements, and power-button location on the lower portion of the right protrusion. The devices share substantially identical proportions, curvature, and visual balance, creating an immediate and unmistakable impression of sameness when viewed side by side.

19. Both the Pulsetto Device and Defendant's product are designed to be worn in an identical manner—wrapped around the user's neck with the electrode pads contacting the vagus-nerve region—and are marketed for the same claimed purpose of providing non-invasive vagus-nerve stimulation to promote relaxation and sleep improvement.

20. The striking similarity between the Pulsetto Device and the Vyntalix product is not coincidental. Defendant's device replicates the Pulsetto Device's distinctive configuration, aesthetic cues, and proportions, leaving only minor cosmetic variations. This level of mimicry reflects deliberate copying intended to capitalize on Pulsetto's established goodwill, brand recognition, and the distinctive trade dress that consumers have come to associate exclusively with Pulsetto.

21. Consumers and distributors have contacted Pulsetto expressing confusion as to whether Defendant's product is affiliated with or produced by Pulsetto.

22.     Defendant's acts have caused and continue to cause irreparable harm to Plaintiff's reputation, goodwill, and market position.

## CAUSES OF ACTION

### COUNT I — UNFAIR COMPETITION (15 U.S.C. § 1125(a))

23.     Plaintiff repeats and realleges paragraphs 1–22.

24.     Plaintiff owns valid, protectable rights in its distinctive, non-functional Pulsetto Trade Dress.

25.     The Pulsetto Trade Dress has acquired secondary meaning among U.S. consumers through continuous marketing, publicity, and media exposure, as set forth in the Declaration of Marijus Šaras.

26.     Defendant's manufacture and sale of the Vyntalix DeepSleep Neurostimulator, which copies the Pulsetto Trade Dress, are likely to cause consumer confusion as to source, sponsorship, or affiliation, in violation of 15 U.S.C. § 1125(a).

27.     Defendant's conduct is willful, deliberate, and undertaken in bad faith.

### COUNT II — UNFAIR COMPETITION (NEW YORK COMMON LAW)

28.     Plaintiff repeats and realleges paragraphs 1–27.

29.     Defendant's acts constitute unfair competition under New York common law, including palming off and misappropriation of Plaintiff's goodwill.

30.     Defendant's conduct was deliberate, willful, and in bad faith, entitling Plaintiff to compensatory and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff UAB Pulsetto respectfully requests that this Court enter judgment in its favor and against Defendant Neuro Flow Labs Limited and issue all appropriate

injunctive, equitable, and monetary relief, including but not limited to the following:

(1) That Defendant, its officers, agents, employees, and all persons acting in concert with it be permanently enjoined from manufacturing, importing, marketing, or selling any product that copies or imitates the Pulsetto Trade Dress, or otherwise causes confusion as to source, sponsorship, or affiliation.

(2) That all third parties providing online, financial, or advertising services to Defendant—including crowdfunding and marketplace platforms, web hosts, and payment processors—be directed to disable, remove, or cease supporting any listings or content for infringing products.

(3) That Defendant be ordered to deliver up for destruction all infringing products and promotional materials, and to account for and disgorge all profits obtained from its infringing activities.

(4) That Plaintiff be awarded its actual damages and Defendant's profits, enhanced and trebled for willful infringement under 15 U.S.C. § 1117, together with punitive damages under New York law.

(5) That Plaintiff be awarded reasonable attorney's fees and costs of suit.

(6) That the Court grant such other and further relief as it deems just and proper.

Dated: October 9, 2025            **BOAG LAW, PLLC**

By: /David A. Boag/
447 Broadway, Suite 2-270
New York, NY 10013
dab@boagip.com

*Attorneys for Plaintiff UAB Pulsetto*